UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RIMON HANNA,<br><br>               Plaintiff,<br>v.<br><br>AMERICAN CRUISE LINES, INC., &<br>DOES 1 THROUGH 10, inclusive,<br><br>               Defendants. | Civil Action No.<br>3:19-cv-00074 (CSH)<br><br><br>JULY 18, 2019 |

### RULING ON DEFENDANT AMERICAN CRUISE LINES, INC.'S MOTION TO DISMISS

**HAIGHT, Senior District Judge:**

Plaintiff Rimon Hanna, proceeding *pro se*, brings this action against Defendants American Cruise Lines, Inc. ("ACL"), and Does 1 through 10, inclusive. *See* Doc. 1. Does are the "agent or employee of each of the remaining Defendants." *Id.* ¶ 6. He alleges employment claims related to his time as an executive chef for Defendant ACL. *Id.* ¶¶ 7–8. ACL filed a motion to dismiss Plaintiff's initial Complaint, [Doc. 1], Plaintiff filed an Amended Complaint to address a concern raised by ACL, [Doc. 17 at 2], and the Court then granted Plaintiff leave to file a Second Amended Complaint to clarify that he retained his federal law claims and to include his request for damages, [Doc. 22]. This ruling resolves ACL's motion to dismiss, [Doc. 14], which I construe as now addressed to Plaintiff's Second Amended Complaint, [Doc. 24 (the "SAC")].

### I. BACKGROUND

The facts herein are taken from the allegations in Plaintiff's Second Amended Complaint, which are accepted as true only for the purposes of this Ruling.

In February 2017, ACL hired Plaintiff to be an executive chef on one of its cruise ships. SAC ¶ 7. His interviewer and prospective boss, Chef Thomas Leonard, had promised him that he would be paid a flat rate of $225 per day in addition to getting his travel and living expenses covered as well. *Id.* ¶¶ 7–8. ACL would also hire a kitchen crew—including five chefs—to assist him, and that he would be working nine to ten hours a day, if not less. *Id.* ¶¶ 8, 10. Plaintiff began working for ACL on March 15, 2017. *Id.* ¶ 9.

During his employment, ACL had consistently provided Plaintiff with fewer than five chefs; at one point, there was only one chef working under him. *Id.* ¶ 10. Plaintiff alleges that ACL exacerbated the chef shortage due to improperly classifying all chefs, including Plaintiff, as exempt from earning overtime compensation. *Id.* ¶¶ 11. Once the chefs realized that they had to work approximately fifteen hours per day without overtime and that non-exempt workers, such as the dishwashers, were actually earning more due to overtime pay, they would leave the ship without notice. *Id.* ¶¶ 11, 13.

In addition to the long work hours and short-staffing problem, ACL made many other misrepresentations to him. For example, he was told that his workday would begin between 6:30 a.m. and 7:30 a.m., when, in fact, he had to start at 4:30 a.m. and would finish around 9:30 p.m. or 10:00 p.m. *Id.* ¶¶ 32, 35–36. He was also not told that he had non-chef duties, such as helping the dishwashers, cleaning the kitchen every Thursday and Friday night to prepare for potential FDA inspections, loading delivery boxes, and taking the trash out of the kitchen. *Id.* ¶¶ 36–37.

Moreover, he was told that as a manager, he could discipline and terminate staff for bad behavior. *Id.* ¶¶ 41, 46. Plaintiff had to report rule violations to Leonard and the hotel manager instead because he was not authorized to discipline the kitchen staff. *Id.* ¶ 41. Leonard was also the

person in charge of scheduling, hiring, and training staff, as well as setting the menu, ordering food and supplies, and other tasks. *Id.* ¶¶ 43–45. Plaintiff had no say in these matters. *Id.*

On July 14, 2017, Plaintiff complained about being short-staffed and having to work sixteen hours a day to his superiors, Leonard and Chelsea Hargis. *Id.* ¶¶ 22, 23. Upon information and belief, Hargis is Leonard's boss and ACL's company director for the west coast. *Id.* ¶¶ 22, 24. Plaintiff also asked Hargis to be compensated for his overtime hours. *Id.* ¶ 24.

On July 22, 2017, Plaintiff heard from ACL's hotel manager that Leonard wanted him to go on vacation. *Id.* ¶ 25. However, when Plaintiff texted Leonard about when he should return from vacation on July 24, 2017, Leonard replied, "[W]e are going separate ways." *Id.* ¶ 26. Plaintiff took this to mean that he was fired. *Id.*

Plaintiff contacted the San Diego office of the U.S. Department of Labor in April 2018. *Id.* ¶¶ 15, 17. The Department informed him that he was not eligible to file a claim with the Department because he had earned more than minimum wage and any retaliation was not for being a member of a protected class pursuant to the Federal Labor Standards Act (FLSA). *Id.* ¶ 16. The Department of Labor's Seattle office confirmed this information and also told him that he was not required to file with the Department before filing a lawsuit to pursue his FLSA claims. *Id.* ¶¶ 17, 18.

Plaintiff brings claims of wrongful termination, unpaid wages, retaliation, breach of contract, intentional misrepresentation, and negligent misrepresentation.[1] *Id.* at 1. He also alleges violations of 29 U.S.C. § 207 and Section 215(a)(3) of the FLSA against Defendants, but these appear

---

[1] Plaintiff initially filed his lawsuit in the U.S. District Court for the Southern District of California. Doc. 17 at 2. The action was dismissed without prejudice to refiling in a Court that has personal jurisdiction over ACL. *Hanna v. American Cruise Lines, Inc.*, No. 3:18-cv-0919-CAB-(WVG), 2018 WL 3993357, at *4 (S.D. Cal. Aug. 21, 2018). ACL is a Connecticut corporation. Doc. 17 at 2.

duplicative of his FLSA unpaid wages and retaliation claims. *See id.*

He had initially included claims relating to the violation of the Connecticut Minimum Wage Act, Conn. Gen. Stat. § 31-56, *et seq.*, in his initial Complaint. Doc. 1 at 1. ACL moved to dismiss, arguing in part that Plaintiff had no standing to file such claims because he has never lived nor worked in Connecticut. Doc. 15 ("ACL Mem.") at 3–4. Plaintiff agreed and so filed an Amended Complaint. *See* Doc. 17 ("Pl. Mem.") at 2. ACL then argued that the Amended Complaint appeared to remove references to the FLSA, thereby casting doubt upon this Court's subject-matter jurisdiction over this action. Doc. 19 at 2. After being granted leave by this Court, Plaintiff subsequently filed a Second Amended Complaint to clarify that he maintained his FLSA claims and to include a request for damages. SAC at 1, 23–24.

## II. STANDARD OF REVIEW

"On a motion to dismiss, the issue is 'whether the claimant is entitled to offer evidence to support the claims.'" *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1984)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard creates a "two-pronged approach," *Iqbal*, 556 U.S. at 679, based on "[t]wo working principles." *Id.* at 678.

First, all factual allegations in the complaint must be accepted as true and all reasonable inferences must be drawn in the favor of the non-moving party. *See id.; see also Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591–92 (2d Cir. 2007) (citation omitted). The presumption of truth does not extend, however, to "legal conclusions" or "[t]hreadbare recitals of the

elements of a cause of action supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, "a complaint that states a plausible claim for relief" will survive a motion to dismiss and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679) (quotation marks omitted). "Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Associated Fin. Corp. v. Kleckner*, 480 F. App'x 89, 90 (2d Cir. 2012) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

### III. DISCUSSION

#### A.    Standard for *Pro Se* Litigants

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)). *See also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same); *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). The federal courts' special solicitude towards *pro se* litigants "also embraces relaxation of the limitations on the amendment of pleadings, leniency in the enforcement of other procedural rules, and deliberate, continuing efforts to ensure that a *pro se* litigant understands what is required of him." *Tracy*, 623 F.3d at 101 (2d Cir. 2010) (citations omitted) (collecting cases).

### B. Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6) and D. Conn. L. Civ. R. 7, ACL moved to dismiss Plaintiff's state statutory law claims set forth in the first, seventh, and eighth counts of Plaintiff's initial Complaint because they involved the Connecticut Minimum Wage Act ("CMWA"), under which Plaintiff lacks standing. Doc. 14 at 1. ACL also sought to dismiss Plaintiff's common law claims of wrongful termination and retaliatory discharge set forth in Counts One and Three because they are precluded. *Id.*; ACL Mem. at 1. Plaintiff's Amended Complaint and Second Amended Complaint resolve the standing issue by removing claims related to the CMWA, but ACL contends that its preclusion argument still stands. Doc. 19 at 3.

#### 1. CMWA Claims

"When a plaintiff amends its complaint while a motion to dismiss is pending, which happens frequently, the court then has a variety of ways in which it may deal with the pending motion [to dismiss], from denying the motion as moot to considering the merits of the motion in light of the amended complaint." *United Rentals (N. Am.) Inc. v. Conti Enters., Inc.*, No. 3:15-CV-298 (JCH), 2015 WL 7257864, at *6 (D. Conn. Nov. 17, 2015) (internal quotation marks and citations omitted)). "[A]n amended complaint filed 'as a matter of course' pursuant to Rule 15(a) renders moot a motion to dismiss directed at the original complaint." *Roller Bearing Co. of Am. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008) (citing *Chodos v. F.B.I.*, 559 F Supp. 69 70 n.2 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 289 (2d Cir. 1982)).

Plaintiff has amended his complaint pursuant to Fed. R. Civ. P. 15(a) to specifically address ACL's argument that he has no standing to bring forth CMWA claims: "the Plaintiff corrected his Complaint by filing Plaintiff['s] First Amended Complaint correcting any wage claim[s] under the

labor law in the State of Connecticut to Federal Labor Laws and also Plaintiff deleted his Seventh and Eight[h] Causes of Action." Pl. Mem. at 2. Accordingly, the Court DENIES AS MOOT the portion of ACL's motion to dismiss that seeks to dismissal of Plaintiff's CMWA claims because Plaintiff has removed such claims in the now-operative Second Amended Complaint.

### 2. Preclusion by Available Statutory Remedies

ACL also seeks the dismissal of Plaintiff's claims of wrongful termination and retaliatory discharge (Counts One and Three) to the extent they assert common law claims. ACL Mem. at 5, 7. Although the ACL directed its motion to dismiss at Plaintiff's first Complaint, the Court will consider the merits of ACL's motion regarding these claims in light of Plaintiff's Second Amended Complaint.

Plaintiff retains claims of wrongful termination and retaliatory discharge in his Second Amended Complaint but now appears to specify that they are brought under the FLSA. SAC at 1. If Plaintiff has indeed removed his common law claims of wrongful termination and retaliatory discharge, ACL's preclusion argument regarding these claims is mooted. However, if Plaintiff is not in fact removing his common law claims of wrongful termination and retaliatory discharge, the Court needs to examine ACL's preclusion argument.

In support of dismissing such claims, ACL cites to Connecticut law for the proposition that the availability of statutory remedies for Plaintiff's unpaid wages claims requires the dismissal of his common law claims for wrongful termination and retaliation. ACL Mem. at 5. Specifically, these common law claims are precluded because the FLSA allows Plaintiff to potentially recover unpaid compensation, double damages, and attorney's fees. *Id.* ACL contends that employment is generally at-will in Connecticut, meaning it is terminable by either the employee or the employer for any

reason. *Id.* An at-will employee may still bring an action for wrongful discharge if the reason for the dismissal was contrary to public policy. *Id.* at 5–6. However, ACL argues that Connecticut courts have consistently denied common law claims of wrongful termination when a statutory remedy exists. *Id.* at 6. A remedy under FLSA exists for unpaid overtime wages. *Id.* Because this remedy exists, ACL contends that Plaintiff's common law wrongful termination claim must be dismissed, and his common law retaliation claim should also be dismissed given that it is premised upon the same set of facts as the wrongful termination claim. *Id.*

The FLSA allows an employee to bring an action against his employer for violations of sections 206 and 207, as well as section 215(a)(3) of the statute. 29 U.S.C. § 216(b). Sections 206 and 207 refer to the general requirements, respectively, that employers must pay their employees at least a federal minimum wage and that they must be paid overtime compensation. 29 U.S.C. §§ 206, 207. Section 215(a)(3) is the FLSA's anti-retaliation provision, making it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3).

ACL assumes that Plaintiff only brings "statutory causes of action seeking payment of wages and overtime." ACL Mem. at 5. ACL does not argue that Plaintiff brings forth an FLSA claim for retaliation, but because Plaintiff's Second Amended Complaint—which was filed after ACL's motion to dismiss—appears to include one, [SAC at 1], the Court will consider this in its analysis as well. As stated *supra*, Plaintiff's operative Second Amended Complaint omits any CMWA claims, and so only the FLSA serves as a potential statutory basis to preempt Plaintiff's claims.

As for any FLSA claims, Plaintiff seems to concede that he does not have any potential minimum wage claims, [SAC ¶ 16], but he may have FLSA claims concerning unpaid overtime compensation and retaliation. Plaintiff contends that he was improperly classified as exempt from earning overtime, [*id.* ¶ 11], and he calculates that he is owed at least $46,578 for overtime compensation, [*id.* at 18–19]. He also claims that he was improperly fired after complaining about not being compensated appropriately. *Id.* ¶¶ 24–28. For the purposes of this motion and in consideration of his *pro se* status, the Court will assume that, in addition to common law claims of wrongful termination and retaliation, Plaintiff has intended to bring forth FLSA claims for unpaid overtime compensation and retaliation as well.

The Court first turns to the task of determining whether ACL is correct that Plaintiff's FLSA claim of unpaid overtime compensation precludes his common law claims of wrongful termination and retaliation. Connecticut case law establishes the general rule that "[w]hen a plaintiff has 'available to him administrative remedies that could have afforded him meaningful relief . . . [h]is failure to [properly pursue those remedies] forecloses his access to judicial relief." *Burnham v. Karl & Gelb, P.C.*, 745 A.2d 178, 187 (Conn. App. Ct. 2000). However, the *Burnham* rule does not apply here where the statutory claim—one for unpaid overtime compensation—for which a remedy exists is different in kind from the common law claims that the statutory claim allegedly precludes.

This Court considered into the specific issue of preclusion of a wrongful termination claim in *Corpes v. Walsh Constr. Co.*, 130 F. Supp. 3d 638 (D. Conn. 2015). In *Corpes*, Judge Shea of this Court held that, in application of Connecticut state law, the Plaintiff "has an alternative statutory remedy for her allegedly retaliatory termination, and thus may not press her common law wrongful termination claim." 130 F. Supp. 3d at 641. Specifically, the FLSA's anti-retaliation section and

potentially the CMWA's provision against discharging employees for whistleblowing precluded the *Corpes* plaintiff's common law "claim for wrongful termination in violation of public policy." *Id.* at 641–43.

In other words, a statutory claim for retaliation precludes a common law claim for retaliation. ACL is suggesting that the rule goes further, arguing that preclusion of such a common law claim also exists when a party alleges a different type of statutory claim, such as unpaid overtime wages, for which he may be entitled a statutory remedy purportedly because they rely upon the same set of facts. ACL Mem. at 5. ACL cites to *Burnham* in support, *id.* at 6, but like in *Corpes*, *Burnham* involves a statutory claim for retaliation that precludes a common law claim for retaliation. Specifically, the Supreme Court of Connecticut in *Burnham* had found that a Connecticut statute prohibiting employers from retaliating against whistleblowing employees, Conn. Gen. Stat. § 31-51m(b), precludes a common law claim of wrongful discharge for whistleblowing. 745 A.2d at 183.

The same is true for the other cases upon which ACL relies. *See Campbell v. Town of Plymouth*, 811 A.2d 243, 250 (Conn. App. Ct. 2002) (affirming lower court's holding that Conn. Gen. Stat. § 31-51m "provides the exclusive remedy for wrongful discharge for 'whistleblowing' and that the availability of that statutory remedy precluded the plaintiff from pleading any alternative, common-law cause of action"). *See also Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 388 n.3 (2d Cir. 2000) (summarizing *Burnham* rule); *Blantin v. Paragon Decision Res., Inc.*, No. CIV.A.3:03CV2162 (CFD), 2004 WL 1964508, at *2 (D. Conn. Aug. 31, 2004) ("Since Blantin has remedies available to her under Title VII and CFEPA [for wrongful discharge], she may not bring a common-law wrongful discharge action based on a violation of the public policy embodied in Title VII and CFEPA."); *Swihart v. Pactiv Corp.*, 187 F. Supp. 2d 18, 25 (D. Conn. 2002) (barring

plaintiff's common law wrongful discharge claim because she has an adequate statutory remedy for her Title VII retaliation claim); *Carvalho v. Int'l Bridge & Iron Co.*, No. 3:99CV605 (CFD), 2000 WL 306456, at *7 (D. Conn. Feb. 25, 2000) ("Because Carvalho has available to him statutory causes of action to redress the alleged public policy violations [for wrongful discharge], there is no need for a common law cause of action to vindicate the same public policies; therefore, his wrongful discharge claim is barred.").

ACL raises a different sort of argument than the one addressed in these cases. ACL is asserting that an FLSA unpaid overtime compensation claim precludes a common law claim for retaliatory discharge and wrongful termination. ACL Mem. at 5. This argument stretches the case law too far because these claims are based upon a different set of facts. Here, Plaintiff's claim for unpaid overtime compensation is based upon a set of facts purporting that ACL did not pay him overtime wages, whereas the basis of his claims for wrongful termination and retaliation is that he was allegedly terminated for airing his grievances about said lack of compensation and other employment conditions. His claim for unpaid overtime compensation in violation of the FLSA is simply not equivalent to a common law claim for wrongful termination or retaliation. Accordingly, Plaintiff's assertion of an FLSA claim for unpaid overtime compensation does not invoke the *Burnham* rule as ACL alleges to bar his common law wrongful termination and retaliation claims.

The Court now turns to whether Plaintiff's FLSA retaliation claim precludes a common law claim for retaliation. As stated previously, Connecticut law bars a common law claim where the plaintiff has an adequate statutory remedy under the *Burnham* rule. *See*, *e.g.*, *Swihart*, 187 F. Supp. 2d at 25 (barring plaintiff's common law wrongful discharge claim because she has an adequate statutory remedy for her Title VII retaliation claim). However, whether Plaintiff has an adequate

statutory remedy here depends on whether he has an FLSA retaliation claim in the first place.

"FLSA retaliation claims are subject to the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Thus a plaintiff alleging retaliation under FLSA must first establish a *prima facie* case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (citations omitted). "Employment retaliation claims are not subject to any such 'heightened pleadings requirement[s]'; rather, a plaintiff in a retaliation case must meet the ordinary pleading standard—that is, he or she must plead facts 'necessary to state his claim and the grounds showing entitlement to relief.' *Trowbridge v. Wernicki*, No. 3:13-CV-01797 JAM, 2015 WL 3746346, at *3 (D. Conn. June 15, 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002))). Moreover, section 215(a)(3) of the FLSA is interpreted broadly as it "does not restrict its protections to employees who file formal, written complaints with government agencies." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 115 (2d Cir. 2015). The statute encompasses "oral complaints made to employers in a context that makes the assertion of rights plain." *Id.*

Plaintiff's termination predates any invocation of the FLSA. Plaintiff is alleging that ACL retaliated against him because he had complained about ACL breaking its promises to him. SAC ¶ 23. His complaint to his superiors does not meet the bar set by the Second Circuit for an FLSA retaliatory discharge claim because it is not sufficiently "framed in terms of potential illegality" and is instead framed as a breach of contract. *See Dunn v. Sederakis*, 143 F. Supp. 3d 102, 112

-12-

(S.D.N.Y. 2015) (comparing cases to determine when an oral complaint is protected under FLSA). An FLSA retaliation claim would require Plaintiff to allege that he was fired for raising his employment *rights* under law. While Plaintiff is not required to formally plead a *prima facie* case for retaliation, the Court is unable to discern a plausible basis to infer that ACL fired Plaintiff for engaging in protected activity under the FLSA. It would thus seem that Plaintiff does not have an adequate statutory remedy for retaliation because he has not alleged a statutory claim for retaliation.

Accordingly, the Court DENIES the portion of ACL's motion seeking to dismiss Plaintiff's common law wrongful termination and retaliation claims. ACL's preclusion argument is either moot due to Plaintiff's amendments to his complaint, or unsubstantiated under Connecticut common law. However, Plaintiff's claim for retaliation in violation of section 215(a)(3) of the FLSA is dismissed without prejudice as he has not met the pleading requirements for such a claim. His FLSA wrongful termination claim is also dismissed without prejudice as it is duplicative of the FLSA retaliation claim. The Court considers Plaintiff's Second Amended Complaint to retain common law claims for wrongful termination and retaliation, but Plaintiff is warned that this ruling makes no determination as to the merits of these claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant ACL's Motion to Dismiss, [Doc. 14], is in part DENIED AS MOOT and in part DENIED on the merits. However, Plaintiff has not pleaded a claim in violation of the FLSA's anti-retaliation statute, and so his FLSA claims for wrongful termination and retaliation are DISMISSED WITHOUT PREJUDICE. In light of this ruling, the Court interprets the Plaintiff's Second Amended Complaint to still include claims for: (1) wrongful termination, (2) unpaid overtime compensation in violation of Section 207 of the FLSA, (3) retaliation, (4) breach

of contract, (5) intentional misrepresentation, and (6) negligent misrepresentation.

It is SO ORDERED.

Dated: New Haven, Connecticut
       July 18, 2019

                                              */s/ Charles S. Haight, Jr.*
                                              CHARLES S. HAIGHT, JR.
                                              Senior United States District Judge