## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RIMON HANNA,

          Plaintiff,

v.

AMERICAN CRUISE LINES, INC.,

          Defendant.

Civil Action No.
No. 3:19-cv-74 (CSH)

**DECEMBER 17, 2020**

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT [Doc. 35 & 39]

**HAIGHT, Senior District Judge:**

In this pro se action arising out of an allegedly wrongful termination of employment, following discovery the parties cross-move for summary judgment. This Ruling resolves those motions.

I

In March 2017, pro se Plaintiff Rimon Hanna accepted employment as an Executive Chef with Defendant American Cruise Lines, Inc. ("ACL"). ACL operates a fleet of passenger vessels along the Eastern and Western seaboards of the United States and contiguous rivers. Hanna began work for ACL on April 2, 2017, as Executive Chef on board the *American Spirit*, a passenger vessel which operated in U.S. West coast sheltered waters. ACL fired Hanna on July 21, 2017.

Plaintiff filed his initial complaint against ACL on January 14, 2019. The operative pleading became a Second Amended Complaint [Doc. 24], which ACL moved to dismiss. The Court granted that motion in part and denied it in part, in an opinion reported at 2019 WL 3231202, familiarity with

1

which is assumed.  *See Hanna v. Am. Cruise Lines, Inc.*, No. 3:19-CV-00074 (CSH), 2019 WL 3231202, at *1 (D. Conn. July 18, 2019).  As the result of that Ruling, Plaintiff's surviving claims emerged as a claim for unpaid overtime compensation in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and state or common law claims for wrongful termination, retaliation, breach of contract, intentional misrepresentation, and negligent misrepresentation.

The parties have engaged in some discovery.  Plaintiff is proceeding pro se; ACL is represented by counsel.  The parties have now cross-moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Doc. 35 & 39.

## II

Hanna alleges that as the executive chef on board the *American Spirit,* he was responsible for the feeding of the vessel's crew and passengers during voyages on the Western rivers.  Hanna claims that he put in overtime hours for which ACL has not paid him, in violation of the Fair Labor Standards Act.  Of the several claims pleaded in the Second Amended Complaint, that is the only claim falling within this Court's original federal subject matter jurisdiction.

The FLSA establishes a general rule that an  employer must pay an employee at a "rate not less than one and one-half times the regular rate at which he is employed" for all overtime hours that the employee works.  29 U.S.C. § 207(a)(1).  However, the statute contains several exemptions from that mandate, one of which exempts from the overtime requirement "any employee employed as a seaman." *Id.* § 213(b)( 6).  The case at bar turns upon whether, within the context of the FLSA, Hanna was "employed as a seaman" on board the *American Spirit.*  The parties dispute the issue. ACL contends Hanna *was* a "seaman": a characterization that, if correct, precludes Hanna's claim

for FLSA-based overtime.  Hanna contends he was some other sort of ACL employee, and consequently entitled to the statute's overtime remedy.

"Seamen" are "emphatically the wards of the admiralty," *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 246 (1942) (citing and quoting *Harden v. Gordon*, 11 F. Cas. 480, 485 (C.C.D. Me. 1823) (Story, *J.*)).  But whether it behooves an individual to profess membership in that ancient calling depends on the circumstances of each case.  One must be a "seaman" in order to invoke the traditional admiralty remedy of maintenance and cure, or assert a cause of action in negligence under the Jones Act, 46 U.S.C. § 688(a), against his employer for an injury incurred "in the course of his employment."  "Congress enacted the Jones Act in 1920" for the purpose of completing "the trilogy of heightened legal protections (unavailable to other maritime workers) that seamen receive because of their exposure to the perils of the sea." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (l995) (citation and internal quotation marks omitted).  By way of contrast, Congress did not undertake in the Fair Labor Standards Act of 1938 to *expand* seamen's legal protections: it *exempted* seamen from the overtime protection contained in the statute.  In *Anderson v. Manhattan Lighterage Corp.*, 148 F.2d 971 (2d Cir. 1945), the Second Circuit described "the legislative history of the 'seamen' exemption in the Fair Labor Standards Act. . . . Pursuant to requests made by various maritime unions, the exemption was written into the Act primarily to avoid conflict" with other statutes covering seamen's wages. 148 F.2d at 973.

So the case at bar comes down to a conflict frequently encountered in courts: parties interpreting or applying statutes in manners favorable to their economic interests.  ACL proclaims Hanna to be a "seaman" in order to avoid paying him FLSA overtime.  Hanna denies he is a "seaman" in order to collect overtime.

3

In enacting the seaman exemption to the FLSA, Congress did not define "seaman." That definition is undertaken by the regulations promulgated by the U.S. Department of Labor pursuant to statutory authority. *See* 29 C.F.R. § 783.0 *et seq.* (the "DOL" regulations). The DOL regulations provide in § 783.31 that

> an employee will ordinarily be regarded as "employed as a seaman" if he performs, as master or subject to the authority, direction, and control of the master aboard a vessel, service which is rendered primarily as an aid in the operation of such vessel as a means of transportation, provided he performs no substantial amount of work of a different character.

29 C.F.R. § 783.31.

29 C.F.R. § 783.33 states that "[w]hether an employee is 'employed as a seaman' . . . depends upon the character of the work he actually performs," and reiterates the general proposition articulated in § 781.31 that "one is not employed as a seaman within the meaning of the Act unless one's services are rendered primarily as an aid in the operation of the vessel as a means of transportation, as for example services performed substantially as an aid to the vessel in navigation." *Id.* § 783.33" In the regulations' parlance, "work of a different character" is "substantial" and preclusive of a seaman's status under § 783.31 "if it occupies more than 20 percent of the time worked by the employee during the workweek." *Id.* § 783.37. "The term 'seaman' includes members of the crew such as sailors, engineers, radio operators, firemen, pursers, surgeons, *cooks*, and stewards if, as is the usual case, their service is of the type described in § 783.31." *Id.* § 783.32 (emphasis added). I emphasize the noun "cooks" because that is the practical function embraced by Hanna's more elegantly phrased job title of "executive chef."

Under the regulatory scheme, an individual's status as a "seaman" depends more on the work

4

he does than his job title while doing it.  That distinction reflects the one drawn by the courts.  *See Coffin v. Blessey Marine Servs., Inc.*, 771 F.3d 276, 280 (5th Cir. 2014) ("The use of the word 'ordinarily' in § 783.31 evinces that the FLSA eschews a fixed meaning of the term seaman. . . . Similarly, we must evaluate an employee's duties based upon the character of the work he actually performs and not on what it is called or the place where it is performed.") (citing 29 C.F.R. § 783.33).

Decisions in this Circuit are to the same effect.  In *Anderson v. Manhattan Lighterage Corp.*, 148 F.2d 971 (2d Cir. 1945), the Second Circuit held that where 95 per cent of the duties of lighter "captains" consisted of loading, unloading or tallying the vessels' cargoes, duties "similar to those of a longshoreman," those individuals were not "seamen" within the meaning of the FLSA seaman exemption.  148 F.2d at 972.  Their FLSA overtime claims were allowed.  By way of contrast, in *Martin v. McAllister Lighterage Line, Inc.*, 205 F.2d 623 (2d Cir. 1953), the plaintiff deck scow captains "ha[d] nothing to do with loading or unloading their scows; their duties with respect to cargo [were] only to see that it [was] so placed as not to strain the scow or endanger its stability." 205 F.2d at 626.  Those individuals were held to be "seamen" within the FLSA seaman exemption. Their FLSA overtime claims were dismissed.  For comparable analyses, *see Knudsen v. Lee & Simmons, Inc.*, 163 F.2d 95 (2d Cir. 1947); *McCarthy v. Wright & Cobb Lightereage Co.*, 163 F.2d 92 (2d Cir. 1947); *Levesque v. F.H. McGraw & Co.*, 165 F.2d 585 (2d Cir. 1948); and *Sorensen v. City of New York*, 202 F.2d 857 (2d Cir. 1953).

The Second Circuit does not appear to have considered whether "cooks" (or "chefs") serving on board vessels are "seamen" within the purview of the FLSA seamen exemption.  The Fifth Circuit considered that question in *Martin v. Bedell*, 955 F.2d 1029 (5th Cir. 1992).  The Secretary of Labor

5

sued the defendant company to compel FLSA overtime payments to cooks who worked on board defendant's vessels providing offshore maintenance to oil companies.  The cooks prepared food for the crews of the vessels on which they served, but also prepared food for employees on other ships.  The Fifth Circuit announced a bright line rule regarding the applicability of the seaman exception to cooks afloat: If cooks prepare food for crew members of their own ships, they are "seamen" and exempt from FLSA coverage; but if the cooks spend a substantial amount of time preparing food for non-crew members, they are not "seamen" for FLSA purposes.  "It would appear," the Fifth Circuit said about an inconclusive trial court record, "that [the defendant's] cooks primarily feed workers who are not involved in the navigation of the boat on which they live and from which they work." 955 F.2d at 1036.  The Fifth Circuit remanded the case to the district court.  Deferring to the Labor Department regulations, the court of appeals said: "We remand so that the district court may determine if the cooks spend more than 20% of their time preparing food for non-crew members. If they do, they are not seamen under the FLSA."  *Id.*

More recently, in a case unrelated to food preparation, *Coffin v. Blessey Marine Services, Inc.,* 771 F.3d 276 (5th Cir. 2014), the Fifth Circuit spoke approvingly of its ruling in *Martin*:

> In *Martin* . . . [w]e recognized that a vessel-based cook is *usually* a seaman because he usually cooks *for* seamen. We remanded that case for further factual findings, however, so that the district court could determine whether the cooks spent a significant amount of time preparing food for nonseamen.  Our distinction underscores the important point that food preparation is neither inherently seaman nor nonseaman work, and its character depends on the context in which it is performed.

771 F.3d at 283 (emphasis in original and internal citations omitted).

III

As pointed out *supra*, the FLSA exempts "seamen" from the statute's overtime provisions without defining the term "seaman," and the sometime overlapping DOL regulations undertake that definition.  The regulations were accurately summarized in *McLaughlin v. Harbor Cruises LLC*, 880 F. Supp. 2d 179  (D. Mass. 2012):

> In summary, then, under the DOL regulations, an employee is to be considered a "seaman" for purposes of the exemption if he (1) works aboard a vessel, (2) is subject to the control of the master of the vessel, (3) performs work that is rendered primarily as an aid in the operation of the vessel as a means of transportation, and (4) performs only incidental, and not substantial, work of a different character.

880 F. Supp. 2d at 182.  Those criteria are entirely consistent with the Second Circuit decisions cited *supra* in Part II.

Applying the statute and regulatory scheme to the case at bar, I conclude that within the context of the Fair Labor Standards Act, Plaintiff Hanna was employed as a *seaman* on board ACL's vessel *American Spirit*.  Accordingly, Hanna's claim for FLSA overtime is precluded by the statute's seamen exemption.

The *American Spirit* is a passenger vessel.  She is exclusively engaged in the commercial transportation of passengers on cruises through ocean and inland navigable waters, touching for visits at ports along the way.  While the *American Spirit* is engaged on a cruise, her passengers sleep and take their meals on board.  Hanna, employed as a cook ("chef") with executive responsibilities, arranged for the purchase and preparation of food for consumption by the *American Spirt*'s crew and passengers.

Passengers would be unlikely to sign up for week-long transportation on an ACL vessel's

7

cruise if ACL did not arrange for passengers to be fed while in transit. It is also necessary for the shipowner to feed the vessel's crew. Hanna's service as a cook on board the *American Spirit,* procuring and preparing meals for crew and passengers, was with regard to both groups "rendered primarily as an aid in the operation of such vessel as a means of transportation" of the passengers on the cruise, as that phrase is used in 29 C.F.R. § 783.31. Because that is so, § 783.31 characterizes Hanna as "an employee" who "will ordinarily be regarded as employed as a seaman." Section 783.32 explicitly provides that the term "seaman" includes "cooks" if their service "is of the type described in § 783.31" (as Hanna's service is).

This Court need not perform the sort of culinary analysis the Fifth Circuit required in *Martin*, which drew a distinction between an onboard cook's preparation of food for crew members on his ship and preparation for non-crew members employed by other companies. *Martin* held that a ship's cook may not be a "seaman" *vis-a-vis* these non-crew strangers, but the distinction does not apply to Hanna, who cooked for passengers sailing on and being transported by the *American Spirit*, on which Hanna was also sailing.

While the Second Circuit does not appear to have squarely addressed the question whether a cook serving passengers on a passenger vessel is a "seaman" for FLSA purposes, I think it clear that the statutory and regulatory scheme requires an affirmative answer. I agree with the sensible conclusion reached by the district court in *McLaughlin,* which held that an employee of a cruise company, whose work on passenger vessels consisted of serving passengers with food and drink in a ship's galley, was a "seaman" within the seamen exemption to the FLSA. The district judge posed the question as whether the individual's work in the galley is "work rendered 'as an aid in the operation of [the] vessel as a means of transportation,' or is it work 'of a different character?'" 880

8

F.Supp.2d at 187 (citing and quoting 29 C.F.R. § 783.31).   The court then reasoned that "pursers, surgeons and cooks . . . perform work for the benefit of a vessel's passengers;" the vessel's operation "as a means of transportation of passengers necessarily entails attention by some employees working on the vessel to the service of the passengers;" serving drinks and food "to passengers could easily be considered part of the 'operation of the vessel' in this sense, and those who do that work could thus, consistent with § 783.32, be considered 'seamen;'" and "the fact that an employee performs work that primarily serves the passengers, as opposed to the crew, does not necessarily exclude that work from being considered work 'in aid of the operation of the vessel as a means of transportation.'" *Id*. at 187-188.

That analysis, with which I agree, results in Hanna's characterization as a "seaman" with respect to his services on board the *American Spirit* cooking for the vessel's crew and her passengers.  Hanna obviously acted as a seaman in cooking for the crew.  No case can be made for separating his hours cooking for passengers from those cooking for the crew and granting FLSA overtime for the first category while denying it for the second, under the statute's seaman exception. Hanna's service to the passengers was rendered "in aid of the operation of the vessel as a means of transportation" of passengers.

It follows that Hanna was employed throughout as a "seaman" within the FLSA's statutory and regulatory scheme.  Accordingly, he comes within the seaman exception to the Act, and his claim for FLSA overtime must be denied by the Court.  ACL is entitled to summary judgment dismissing that claim.

IV

Plaintiff Hanna's remaining claims in the Second Amended Complaint are based on state or

common law.  If there was no basis for original jurisdiction over these claims in this federal court, and the only federal claim has been dismissed, the Court would exercise its discretion and dismiss the other claims without prejudice.  *See* 28 U.S.C. § 1367(c)(3);  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).

28 U.S.C. § 1332(a)(1) provides that federal district courts have original jurisdiction "of all civil actions" whose controversy exceeds the value of $75,000 and is between "citizens of different States."  The Second Amended Complaint does not adequately plead diversity.  It alleges that Defendant ACL is a Connecticut corporation but says nothing about the citizenship of Plaintiff. ACL moves for summary judgment on these additional claims as well, but it would be inappropriate for the Court to consider the merits of the claims if the Court's jurisdiction has not been established. Accordingly, judgment on these claims will be reserved, and Plaintiff given additional time to file a further amended complaint, which must allege Plaintiff's state of domicile at the time the initial complaint was filed.

V

**CONCLUSION:**

For the foregoing reasons, the Court makes this Order:

1.  The Motion of Defendant American Cruise Lines, Inc. for Summary Judgment [Doc. 35] is GRANTED IN PART.  The second and seventh counts of Plaintiff Hanna's Second Amended Complaint, alleging violations of the Fair Labor Standards Act, are DISMISSED WITH PREJUDICE.

2.  The Court reserves decision on the balance of Defendant's Motion for Summary

10

Judgment, and on Plaintiff's Cross-Motion for Summary Judgment [Doc. 39], pending Plaintiff's

compliance with Paragraph 3 of this Order.

3.  On or before January 15, 2021, Plaintiff must file a further amended complaint, containing

allegations sufficient to plead that at the time the initial complaint was filed, Plaintiff and Defendant

were citizens of different States.  Failing compliance with this Paragraph, Plaintiff's remaining

claims will be dismissed without prejudice.

It is SO ORDERED.

Dated:   New Haven, Connecticut
           December 17, 2020


                                             /s/Charles S. Haight, Jr.
                                             CHARLES S. HAIGHT, JR.
                                             Senior United States District Judge