## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RIMON HANNA,<br><br>                    Plaintiff,<br><br>v.<br><br>AMERICAN CRUISE LINES, INC., *et al.*,<br><br>                    Defendants. | Civil Action No.<br>No. 3:19-cv-74 (CSH)<br><br><br>**APRIL 27, 2022** |

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [Doc. 35 & 39]

**HAIGHT, Senior District Judge:**

Plaintiff Rimon Hanna was at one time employed by the Defendant, American Cruise Lines, Inc. ("ACL").  ACL terminated Hanna's employment.  Hanna sued ACL in this action, asserting claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and state or common law claims for wrongful termination, retaliation, breach of contract, intentional misrepresentation, and negligent misrepresentation. *See* Doc. 24 (Second Amended Complaint).

The Court has issued several prior rulings in the case:  2019 WL 3231202 (July 18, 2019) ("*Hanna I*"), 2020 WL 7405738 (December 17, 2020) ("*Hanna II*"), and an unreported memorandum and order [Doc. 57] dated July 28, 2021 ("*Hanna III*"). Familiarity with these rulings is assumed.  Their effect was to dismiss Hanna's FLSA claims against ACL, and allow his state and common law claims against ACL to go forward, those claims falling  within the Court's diversity jurisdiction.

Following  discovery,  the  parties  now  cross-move  for  summary  judgment  on  Hanna's

1

remaining claims against ACL.  Doc. 35 & 39.  This Ruling resolves those motions.

## I.  Preliminary Matter: Governing Law

As a preliminary matter, a question arose as to the governing law on the summary judgment motions.  Hanna is a citizen of California.  ACL hired Hanna as the result of discussions in Oregon.  The employment actions giving rise to the claims in suit occurred for the most  part  on board an ACL vessel in Alaska.  ACL is a Connecticut corporation and maintains its principal place of business in Guilford, Connecticut.  The Court entered an order on October 18, 2021 [Doc. 60] directing the parties to submit letter briefs "addressing the question of which state's law applies to Plaintiff's remaining claims."

Hanna, who has pressed his claims *pro se* throughout, responded by saying that he "has no knowledge [or] experience of arguing all of the pending legal issues," and concludes by expressing that "Plaintiff puts his full trust in the Court's hand."  Doc. 61, at 2 (¶ 2).

Counsel for ACL contend in a letter brief  that the law of Connecticut applies to Hanna's tort claims, under the Restatement's "most significant relationship" test.  Doc. 62, at 2.  That contention is correct as to Hanna's claims sounding in tort, and also as to his surviving claim for breach of contract.  ACL's decisions to hire Hanna and thereafter to discharge him were all made by or through ACL's main "Home  Office" in Guilford, Connecticut.  *Id.* at 3. ACL executed the employment agreement  in Connecticut. *Id.*  The location of the ports of call of the vessel on which Hanna performed that employment is incidental, and plays no meaningful part in the choice of law calculus. *Id.*

I conclude that the substantive law of Connecticut governs these cross-motions for summary judgment.

## II.  Standard of Review

Hanna and ACL cross-move for summary judgment with respect to those claims Hanna asserts against ACL which survive the prior motion practice. Doc. 35 & 39.

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.

"While it is true that a court is required to resolve all ambiguities and draw all factual inferences in favor of the nonmovant, a plaintiff may not survive summary judgment merely by conjuring a hypothetical issue of material fact." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation and internal quotation marks omitted).  In *Brown v. Eli Lilly and Company*, 654 F.3d 347 (2d Cir. 2011), the Second Circuit expanded on that theme:

> Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.  More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely

3

on conclusory allegations or unsubstantiated speculation.

654 F.3d at 358 (citations and internal quotation marks omitted).

I will apply these principles to the cross-motions for summary judgment in the case at bar. That discussion is preceded by the following factual background.

### III.  Factual Background

The pleadings, Local Rule 56(a) statements, affidavits, and exhibits in the record demonstrate that the following facts are undisputed or indisputable.

On January 5, 2017, the Plaintiff, Rimon Hanna, filled out and electronically signed a form prepared by Defendant ACL captioned "Employment Application."  Doc. 36-1 (Ex. 1 to ACL's Local Rule 56(a)(1) statement [Doc. 37]).  In that form, Hanna identified himself as a resident of San Diego, California, with three years of study in "Business" at the University of California, San Diego. Doc. 36-1, at 2- 3.  He also named his present employer as the " Puesto Restaurant" and described his job title as "Executive Chef." *Id*. at 4.  In support of his application, he stated: "I am experienced and have done this for [a] very long time, work under pressure, team player and looking for a new adventure and I think I could be an asset and addition to your team." *Id.*

The Employment Application contained a "Pre-Employment Statement" that the applicant was instructed to "[p]lease read before signing." *Id.* at 5.  That statement recites, in part, that "this Employment Application is not an offer of employment," and "nothing contained in this Employment Application creates a contract between the organization and me for employment or any other benefit." *Id.*  Under the heading  "Employment 'At-Will,'" the statement continues:

4

> I understand and agree that any employment with American Cruise Lines, Inc. is "at-will" and for no definite period and that my employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of American Cruise Lines or myself.
>
> I also understand that notwithstanding anything to the contrary including, but not limited to, any verbal comments or any written comments in any of American Cruise Line's forms, policies, or operations manuals, American Cruise Lines has not and will not offer any contract of employment to its employees. I understand and agree that any conversations I may have had with any employee of American Cruise Lines will not be considered a contract and that my employment is, and will remain, "at-will."
>
> I further understand that only the President of American Cruise Lines, Inc. is authorized to enter into an employment contract on behalf of American Cruise Lines with an employee and such contracts, if any, must be in writing and fully executed by the President of American Cruise Lines, Inc.

Doc. 36-1, at 5- 6.

Hanna checked the signature box on this application form, pursuant to a notation in the form that "[c]hecking this signature box is the legal equivalent of a handwritten signature and indicates your acceptance of these terms." *Id.* at 6. His signature was electronically dated January 5, 2017, at "4:48 AM," and he awaited developments. *Id.*

ACL construed Hanna's application as one for employment as an "Executive Chef" on one of the Line's vessels. Shortly before March 2, 2017, Hanna met with Thomas Leonard, ACL's Corporate Executive Chef, to discuss Hanna's interest in that position. Doc. 36-1 (Ex. 2, Deposition of Rimon Hanna), at 11-12.[1] On March 6, 2017, ACL offered Hanna the position of Executive Chef,

---

[1] The Court cites the deposition pages by the numbers appearing at the top of the pages in Document 36-1 (versus the internal numbers shown in the deposition transcript).

which Hanna accepted on that day. Doc. 37, at 2 (¶ 6).[2]   On March 15, 2017, Hanna affixed his electronic signature to another form prepared by ACL, this one captioned "Employment At-Will," which recites:

> I understand and agree that any employment with American Cruise Lines, Inc. ("ACL") is **"at-will"** and for no definite period and that my employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of the Company or myself.

Doc. 36-1 (Ex. 3), at 42 (emphasis in original).   This form then repeats the language previously quoted from the Employment Application.  *Id.*

Hanna's first working day as an Executive Chef for ACL was April 2, 2017.  Doc. 37, at 2 (¶ 9).  He was assigned to the vessel *American Spirit*, a passenger ship engaged in cruising the inland waters of the northwestern United States. *Id.* at 2 (¶ 10); Doc. 36-1 (Ex. 9, Affidavit of Paul E. Taiclet, ACL Vice President), at 121 (¶ 7).  As Executive Chef, Hanna had supervisory and actual responsibilities for providing food to passengers and other members of the crew, maintaining the galley, and supervising subordinate personnel (including other chefs, or "sou-chefs," in traditional French parlance).  Doc. 37, at 2 (¶ 12) and 4 (¶ 21); Doc. 36-1 (Ex. 9), at 121 (¶ 9).

Hanna went on vacation from May 27, 2017,  through June 5, 2017. Doc. 37, at 5 (¶ 26).  On July 15, 2017,  the captain of the *American Spirit* sent an e-mail from the vessel to ACL executives, titled "SPIRIT Crew issues," which began by saying that "a wheel or two has certainly come off the bus in regards to crew issues recently." Doc. 36-1 ( Ex. 6, Email from Bryan, "spiritcaptain," to Joe Pascarella, Chelsea Hargis, Samantha Gerakelis, on July 15, 2017, at 2:31 PM), at 49.   The

---

[2]  In citing paragraphs in the Defendant ACL's "Statement of Undisputed  Facts" [Doc. 37], the Court  has reviewed and now  incorporates by reference the documents cited in support of those facts.

*American Spirit* was in port that day.  One of the chefs and a galley steward suddenly decided on their own to leave the ship in the morning, which, according to the captain, "left us short staffed."

*Id.*  The captain's e-mail then states that another chef –

> who is scheduled to leave today, was willing to stay later into the day in order to help with duties on turnaround day, however, Exec Chef, Rimon Hanna, told him he was "relieved of duty" and could leave the boat asap.  This action puzzles me, as he already know [*sic*] that we were very shorthanded today.  I like Chef Rimon, but now question how the Galley management is running . . . .  Chef Rimon has mentioned the issue of "disrespect" towards him several times, and I had a meeting a few weeks ago with them all to address the issues at that time.

*Id.*  ACL terminated Hanna's at-will employment on July 21, 2017.  Doc. 37, at 5 (¶ 30).

### IV.  The Cross-Motions for Summary Judgment

Defendant ACL's motion for summary judgment is uncomplicated.  Doc. 35.  Counsel for ACL stress the undisputed facts that Hanna was an at-will employee, whose employment ACL was entitled to terminate with or without cause or prior notice.  Doc. 35, at 1; Doc. 36 (Defendant's Brief), at 3.  In consequence, ACL's motion contends, its termination of Hanna's employment does not as a matter of law give rise to claims by Hanna for breach of contract or sounding in tort.  Doc. 36,  at 3-4.

Plaintiff Hanna's *pro se* cross-motion for summary judgment seeks recovery on his state and common law claims against ACL that survive the prior motion practice: claims for "wrongful termination, retaliation, breach of contract, intentional misrepresentation, and negligent misrepresentation."  *Hanna II*, 2020 WL 7405738, at *1, *4.  The allegations in Hanna's Second Amended Complaint focus upon his discussions with ACL's Executive Chef, Thomas Leonard,

before Hanna accepted employment by ACL as an executive chef on an ACL vessel.[3]  Doc. 24, at 3.

The theory of Hanna's case is that during that conversation, Thomas Leonard made promises to Hanna concerning Hanna's expected hours of work as the executive chef; payment of compensation, over-time, and travel expenses; promotion within the company; and the hiring and retention of a full galley (or kitchen) crew  to assist Hanna in the performance of his administrative and supervisory duties.  *Id.* at 3-4.

Hanna asserts in his Second Amended Complaint and his cross-motion for summary judgment that the several promises Thomas Leonard made to him were not kept, and that ACL knew those promises were "false when promises of such were made," since "ACL has repeated a pattern of deception toward employees."  Doc. 39 (Plaintiff's Brief),  at 3.  Hanna submits, as evidence in support of his motion, statements of other ACL employees and time records of his service on board the *American Spirit* before ACL terminated him.  *See* Doc. 24, at 14-17 ("total weekly working hours" and "total over time owed" ); Doc. 39, at 151-172  (Ex. 12-13, documents re class action of other employees);  Doc. 46-5, at 16 ("Total Weekly Working Hours") and at 18 ("Total Over Time Owed"); Doc. 46-6 (Declarations of Craig McQuown, Dallas Blankenship, Jamar Chabazz, Joshua Thorpe, and Rimon Hanna).

---

[3]  In *Hannah II*, the Court granted summary judgment in part  to Defendants on the "second and seventh counts of Plaintiff Hanna's Second Amended Complaint, alleging violations of the Fair Labor Standards Act." 2020 WL 7405738, at *5  Those claims were dismissed without prejudice. *Id.*  Thereafter, in its "Memorandum and Order" (dated July 28, 2021), this Court denied Plaintiff's motion to file a "Third Amended Complaint" with "new and or different claims to those alleged in the Second Amended Complaint." Doc. 57, at 5.

### V. Discussion

The problem confronting Plaintiff Hanna – mostly evaded by his submissions – is that his employment by Defendant American Cruise Lines was "at-will."

ACL presented two forms to Hanna: the "Employment Application" form and the "Employment At-Will" form.  Doc. 36-1, at 5-6, 42.  Hanna electronically signed both forms, thereby signifying his assent to the terms and conditions the forms contained.  *Id*. at 6, 42.  Each of the forms explicitly stated that Hanna's employment was "at-will" and could be terminated by ACL "with or without cause, and with or without notice, at any time."  *Id.* at 5-6, 42.  In addition, each form recited that "notwithstanding anything to the contrary" included in "any verbal comments," ACL "has not and will not offer any contract of employment to its employees."  *Id.* at 6, 42.  Each form further recited Hanna's understanding and agreement "that any conversations I may have with any employee of the company **will not be considered a contract** and that my employment is and will remain **"at-will."** *Id.* at 6, 42  (emphasis in original).

These explicit terms and conditions of his employment, to which Hanna signified his agreement, have the effect of precluding reliance by Hanna upon, and consideration by the Court of, the several oral promises Hanna alleges Thomas Leonard made to him.  These are precisely the sort of "verbal comments" by and "conversations" with ACL officers that the forms signed by Hanna provide *do not* give rise to  a contract between ACL and an at-will employee like Hanna.

ACL exercised its rights as an at-will employer when, in the exercise of its unfettered will, it terminated Hanna's employment.  "In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary. Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear

of legal liability." *Thibodeau v. Design Grp. One Architects, LLC*, 260 Conn. 691, 697–98 (2002) (citation and internal quotation marks omitted). It follows that ACL is entitled to summary judgment dismissing Hanna's claims, sounding in contract or in tort, which allege a wrongful termination by ACL of Hanna's employment, unless Hanna can bring himself within what the Supreme Court of Connecticut refers to as "the public policy exception to the at-will employment doctrine." *Thibodeau,* 260 Conn. at 697.

Notwithstanding the at-will employment doctrine, the Connecticut Supreme Court has "sanctioned a common law cause of action for wrongful discharge in situations in which the reason for the discharge involved impropriety 'derived from some important violation of public policy.'" *Daley v. Aetna Life and Casualty Co.*, 249 Conn. 766, 798 (1999) (citing and quoting *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 475 (1980)). "In doing so, we recognized a public policy limitation on the traditional employment at-will doctrine in an effort to balance the competing interests of employers and employees." *Daley*, 249 Conn. at 798 (citations omitted).

In the seminal case of *Sheets*, the public policy involved was declared in a state criminal statute. After *Sheets,* in *Faulkner v. United Technologies Corp.*, 240 Conn. 576 (1997), the Connecticut Supreme Court expanded that holding to include public policy related to federal criminal statutes. The *Faulkner* court thus held that the public policy exception "applies in a situation in which the source of the criminal sanction is federal, rather than state," the Supreme Court perceiving no difference between a situation where an at-will employee "is forced to engage in conduct that may expose him to federal criminal sanctions and a situation in which an employee is forced to engage in conduct that may expose him to state criminal sanctions." 240 Conn. at 583-84. "The effect on the employee of being forced to choose between violating the law or facing discharge

by his employer is the same regardless of which sovereign criminalizes the conduct." *Id.* at 584.

In *Thibodeau*, the Connecticut Supreme Court stated that "[a]lthough we have been willing to recognize, pursuant to *Sheets* and its progeny, a claim for wrongful termination in appropriate cases, we repeatedly have underscored our adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one. Consequently, we have rejected claims of wrongful discharge that have not been predicated upon an employer's violation of an important and clearly articulated public policy." 260 Conn. at 700-01 (citations omitted).

In interpreting the public policy exception, the Connecticut Supreme Court has thereafter repeatedly noted its "adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a *narrow one*...." *Cimochowski v. Hartford Pub. Sch.*, 261 Conn. 287, 306 (2002) (quoting *Burnham v. Karl & Gelb, P.C.*, 252 Conn. 153, 159 (2000) (emphasis added)). *See also Gagnon v. Housatonic Valley Tourism Dist. Comm'n*, 92 Conn. App. 835, 844 (2006) ("The public policy exception to the at-will employment doctrine . . . is 'to be construed narrowly.'") (quoting *Fenner v. Hartford Courant Co.*, 77 Conn. App. 185, 194 (2003)).

Under the narrow "public policy" exception, "the employee has the burden of pleading and proving that his dismissal occurred for a reason violating public policy." *Morris v. Hartford Courant Co.*, 200 Conn. 676, 679 (1986). In evaluating such claims, the Connecticut Supreme Court has looked "to see whether the plaintiff has ... alleged that his discharge violated any explicit statutory or constitutional provision ... or whether he alleged that his dismissal contravened any judicially conceived notion of public policy." *Gagnon,* , 92 Conn. App. at 844 (quoting *Thibodeau*, 260 Conn.

at 699). *Accord Faulkner*, 240 Conn. at 581 ("In evaluating claims, we look to see whether the plaintiff has alleged that his discharge violated any explicit statutory or constitutional  provision or whether he alleged that his dismissal contravened any judicially conceived notion of public policy.") (citations, internal quotation marks, brackets, and ellipses omitted);    *Iosa v. Gentiva Health Services, Inc.*, 299 F. Supp. 2d 29, 35-36 (D. Conn. 2004) (same).

In *Faulkner,*  the Supreme Court recalled that it had "recognized the inherent vagueness of the concept of public policy and the difficulty encountered when attempting to define precisely the contours of the public policy exemption." 240 Conn. at 581 (citations and internal quotation marks omitted).   Nonetheless, "[a] cognizable claim for wrongful discharge requires the plaintiff to establish that the employer's conduct surrounding the termination of the plaintiff's employment violated an important public policy." *Carnemolla v. Walsh*, 75 Conn. App. 319, 323  n. 5 (2003), *cert. denied*, 263 Conn. 913 (2003) (citing *Sheets*, 179 Conn. at 474-80).

Having considered the *pro se* pleadings and submissions of Plaintiff Hanna, I am unable to discern any allegations that would bring the case at bar within the public policy exception to the at-will employment doctrine.

Hanna is aggrieved by what he perceives to be the failure of American Cruise Lines to abide by certain promises ACL made to him in connection with the terms and conditions of his employment as an executive chef on an ACL ship.  Hanna contends further that ACL fired him in retaliation for his complaints about ACL's conduct.  ACL stresses the at-will nature of Hanna's employment, and denies any wrongdoing.

The significant point for present consideration is that the boundaries of these disputes are drawn entirely between these private parties.  No supervening public policy is implicated.  The

Connecticut Supreme Court's decision in *Sheets*, which created the public policy exception to the at-will employment doctrine, took care to say that the issue turns upon "deciding where and how to draw the line between claims that genuinely involve the mandates of pubic policy and are actionable, and ordinary disputes between employee and employer that are not." 179 Conn. at 477.

As discussed *supra*, a party may assert a claim that genuinely involves the mandates of public policy by alleging "a violation of any explicit statutory or constitutional provision," or by pointing to "judicial precedent" which recognizes a right "sufficiently important to carve out another exception to the employment at-will doctrine." *Iosa* , 299 F. Supp. 2d at 36. Hanna undertakes neither of these demonstrations. In consequence, the at-will employment doctrine, as articulated by the Connecticut Supreme Court, governs this case.

The at-will employment doctrine supports ACL's motion for summary judgment and precludes Hanna's cross-motion for that relief. ACL terminated Hanna's employment without giving him prior notice; it was not required to do so. ACL did not separately state a cause for terminating Hanna; it was not required to have a cause. Hanna cannot complain of ACL's failure to abide by Thomas Leonard's oral assurances because Hanna agreed to ACL's explicit condition that such communications did not give rise to a binding contract.

Hanna fares no better on the basis of his assertion that ACL deceitfully concealed its intent never to fulfill its assurances, and fired employees at times profitable for itself. The record supports a reasonable inference that ACL terminated Hanna's employment on June 21, 2017, as the result of the captain of the *American Spirit* criticizing Hanna's performance as executive chef in an e-mail on June 15, 2017. Doc. 36-1 (Ex. 6), at 49. Hanna's assertions in this particular regard are inconsistent with this evidence, and are conclusory or speculative, of little value on motions for

13

summary judgment.

This analysis precludes Hanna's claim for breach of contract.  It also precludes his tort claims against ACL for wrongful discharge and retaliation.  In *Grossman v. Computer Curriculum Corp.,* 131 F. Supp. 2d 299 D. Conn. 2000), this court (Squatrito, *J.*) held that an at-will employee could not challenge his discharge when his complaint "does not rise to the level of 'an important violation of public policy.'"  *Id.* at 307 (citing and quoting *Sheets* and progeny).  Hanna's complaint suffers from the same inadequacy.

Hanna's separate claims for intentional misrepresentation and negligent misrepresentation fare no better.  His theory on this aspect of the case is that Thomas Leonard of ACL orally promised Hanna that he would "work no more than 10 hours a day, promised Plaintiff 4 (four) chefs to assist him, promised Plaintiff his own room not bunk bed and sharing room with 4 (four) others, promised Plaintiff paid travel expenses[,] . . .promised the use of internet, promised Plaintiff the use of the GYM." Doc. 24 (Second Amended Complaint),  at 20.  Hanna's misrepresentation claims are based on the premise that Leonard "knew all of these promises to be false when he made them and intentionally defrauded Plaintiff when he made such a promise to *induce* Plaintiff to work for him." *Id.* (emphasis in original).  Assuming without deciding that Leonard made these  oral promises to Hanna during discussions regarding Hanna's prospective employment by ACL, such promises are actionable only if Hanna placed "justifiable reliance" upon them.  *D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High Sch.*, 202 Conn. 206, 218 (1987) (quoting Restatement (Second), Torts § 552 (1979)).

Hanna cannot make that showing with respect to any utterances by Leonard because he contemporaneously obtained employment with ACL by signing two documents (application and

agreement for employment) wherein Hanna agreed explicitly "that any conversations I may have had with any employee of the company will not be considered a contract and that my employment is and will remain at-will." Doc. 36-1, at 5-6, 42.

*Grossman* rejected a discharged at-will employee's claim for negligent misrepresentation. This court held that in light of documents containing "repeated assertions of the plaintiff's at-will employment status," the plaintiff employee's conclusion that "he was guaranteed continuous employment" by oral representations "not only falls short of the 'justifiable reliance' required by § 522 of the Restatement (Second) of Torts, but also defies common sense." 131 F. Supp. 2d at 309 (citation, internal quotation marks, and brackets omitted). I reach the same result in the case at bar. This reasoning also applies to Hanna's companion claim of intentional misrepresentation.

## VI.  Conclusion

Plaintiff Rimon Hanna, who gave up his culinary occupation ashore in order to exercise those skills afloat, and thought he had achieved that change in life by obtaining employment with American Cruise Line, is vexed by ACL's sudden decision to terminate him: to make him walk the plank, as it were. Hanna thinks ACL treated him unfairly. He asks this Court for redress.

While Hanna's sincerity and distress are manifest and entirely understandable, the function of the Court is to adjudicate the rights and responsibilities of all parties to the action, by applying the governing law to the facts revealed by the pleadings and the evidentiary record.

American Cruise Lines was entitled to offer Hanna at-will employment, subject to the terms and conditions recognized by Connecticut law. Hanna was free to accept or reject those terms and conditions. He accepted them and began his employment by ACL, which subsequently terminated Hanna in a manner permitted by at-will employment. Hanna fails to show that there are genuine

issues as to material facts that would bring his individual situation within a public policy exception to the at-will employment doctrine.

Having carefully considered the case, and for the foregoing reasons, the Court makes this Order:

1. The Motion [Doc. 35] of Defendant American Cruise Lines for summary judgment is GRANTED.[4]

2. The Cross-Motion [Doc. 39] of Plaintiff Rimon Hanna for summary judgment is DENIED.

3. The Second Amended Complaint [Doc. 24] in this action is DISMISSED WITH PREJUDICE.

---

[4] Because Plaintiff has alleged that the Doe Defendants (Does 1 through 10) are each "the agent or employee" of ACL, who were "acting within the scope of that agency or employee relationship" and with ACL's "permission, consent, and ratification," Doc. 24, at 2, the state law claims against them are also dismissed in light of Plaintiff's "at will" employment under Connecticut law.

Alternatively, these Doe defendants are properly dismissed because Plaintiff failed to identify them and specify their particular conduct at issue; and the deadline for joinder of additional parties has passed. *See* Doc. 28 (imposing deadline of August 15, 2019, to join additional parties); *see also, e.g*, *Diop v. City of New York*, 50 F. Supp. 3d 411, 415n.1 (S.D.N.Y. 2014) ("Although Diop also named two 'John Doe' defendants in his complaint, he neither identified those defendants nor described their role in the conduct at issue in this case, and the deadline for joinder of additional parties has passed. Accordingly, Diop's claims against John Does 1 and 2 are dismissed."); *Cruz v. City of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017) ("[T]here is no indication that Cruz has made any effort to discover the Doe defendants' true names. Indeed, Cruz's opposition to defendants' motion for summary judgment does not even address [them] . . . Cruz therefore cannot continue to maintain a suit against these defendants."); *Coward v. Town & Village of Harrison*, 665 F.Supp.2d 281, 300 (S.D.N.Y.2009) ("Where a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the [defendant's] name, ... the plaintiff simply cannot continue to maintain a suit against the John Doe defendant." (internal quotation marks omitted)).

4.   The Clerk of the Court is directed to close the file.

It is SO ORDERED.

Dated:   New Haven, Connecticut
            April 27, 2022


                                    */s/Charles S. Haight, Jr.*
                                    CHARLES S. HAIGHT, JR.
                                    Senior United States District Judge